FILED
2015 Jun-29  PM 06:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KAREN LOPEZ-EASTERLING,

                Plaintiff,

      vs.

CHARTER COMMUNICATIONS, LLC

          Defendants.

Case No. 2:14-CV-01493-RDP

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
## AS TO
## PLAINTIFF KAREN LOPEZ-EASTERLING

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF UNDISPUTED RELEVANT FACTS ..................................... 1

    A.   Background ............................................................................................... 1

    B.   Charter Employees Are Required To Report All Hours Worked ............................ 3

    C.   Lopez-Easterling Understood Charter's Timekeeping Policies And That She Was Required To Record And Be Paid For All Time Worked ................................ 4

    D.   Lopez-Easterling's Allegations Regarding Lunch Break Off-the-Clock Work ........ 6

III. ARGUMENT ...................................................................................................... 10

    A.   Summary Judgment Standard ................................................................... 10

    B.   Lopez-Easterling's FLSA Claim Fails As A Matter Of Law Because She Has  Failed To Create a Genuine Dispute Of Material Fact As To Charter's Knowledge Of Any Alleged Off-The-Clock Work ......................................... 11

        1.   Lopez-Easterling's Admitted Failure To Record Time Worked Defeats Her FLSA Claim As A Matter of Law ........................... 11

        2.   Lopez-Easterling Lacks Any Other Basis On Which To Assert Charter Had Notice That She Allegedly Worked Off-The-Clock ............... 13

    C.   Lopez-Easterling's Speculation To Prove Her Hours Allegedly Worked During Her Lunch Breaks Is Insufficient To Defeat Summary Judgment ............. 16

II.  CONCLUSION .................................................................................................. 19

## I.      INTRODUCTION

In this lawsuit, Plaintiff Karen Lopez-Easterling ("Plaintiff" or "Lopez-Easterling") seeks to recover overtime wages under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA") for some unspecified amount of time she claims she worked during her lunch break on certain unidentifiable days during her employment with Charter Communications, LLC ("Charter"). Lopez-Easterling admits that the vast majority of this alleged work occurred when her supervisor, Nicole Johnson ("Johnson") was not on site at the Charter Vestavia Hills location where Lopez-Easterling worked.  She further admits that she never told Johnson – or anyone else for that matter – that she was working through lunch without pay.  Lopez-Easterling also did not record this time on her timesheets, despite knowing that Charter's explicit policy is to pay its employees for all time worked.  Lopez-Easterling even certified that all of her timesheets were accurate and correct before approving them.

These undisputed facts demonstrate that Lopez-Easterling's FLSA claim fails as a matter of law.  First, Lopez-Easterling cannot recover for any allegedly uncompensated work, when she failed to avail herself of available time reporting procedures, and Charter neither knew nor should have known of the alleged off-the-clock work.  Second, Lopez-Easterling's FLSA claim fails because she cannot establish either the occurrence or the frequency of any alleged off-the-clock work.  For these reasons and those more fully addressed below, the Court should grant Charter's motion for summary judgment and dismiss Lopez-Easterling's claims in their entirety.

## II.     STATEMENT OF UNDISPUTED RELEVANT FACTS

### A.      Background

1.      Charter provides video, high speed internet and phone services to customers, including in Alabama.  (Dkt. 10, ¶ 5.)

2.      In April 2010, Charter hired Lopez-Easterling for a position in Charter's Dispatch Department in its Vestavia Hills, Alabama store. (Lopez-Easterling Dep. 12.)

3.      In October 2010, Charter promoted Lopez-Easterling to a Front Counter Lead position in the Vestavia Hills, Alabama store. (Lopez-Easterling Dep. 14.)

4.      Lopez-Easterling worked as a Front Counter Lead in the Vestavia Hills store until her termination in June 2014 for theft and for lying during the Charter investigation into the theft. (Lopez-Easterling Dep. 122-126, 135.)

5.      As a Front Counter Lead, Lopez-Easterling's responsibilities included selling Charter services, taking and processing payments, and helping customers that came into the store with issues. (Lopez-Easterling Dep. 14.)

6.      Lopez-Easterling worked five days a week at the Vestavia Hills store throughout her time with Charter. (Lopez-Easterling Dep. 15.)

7.      Throughout the time that Lopez-Easterling worked at the Vestavia Hills store, her supervisor was Nicole Johnson. (Lopez-Easterling Dep. 16.)

8.      Johnson was not at the Vestavia Hills store five days a week because she had other locations she oversaw, including in Jasper, Tuscaloosa, and Gardendale. (Lopez-Easterling Dep. 17; Johnson Dep. 8.)

9.      Johnson traveled to each location at least once a week and she spent the entire day there when she went. (Johnson Dep. 8.)

10.      How many days and whether or not Johnson was present at the Vestavia Hills site would vary depending on the week. (Lopez-Easterling Dep. 17.)

11. Lopez-Easterling testified, "She'd probably be there probably three days. Again, it would change depending on how they needed her in different locations." (Lopez-Easterling Dep. 17.)

12. When Johnson was not on site at Vestavia Hills, Lopez-Easterling was able to reach her by phone and email. (Lopez-Easterling Dep. 17-18.)

**B.     Charter Employees Are Required To Report All Hours Worked.**

13. Charter's Employee Handbook provides that: "It's Charter's practice and obligation to pay non exempt (hourly) employees for any and all hours worked, including any overtime." (Lopez-Easterling Dep. 18-21; Lopez-Easterling Dep. Ex. 1, 2 at CHARTER00001268.)

14. Charter's Employee Handbook states: "Hourly employees must maintain an accurate record of *all hours worked each day* and all time off taken.  Hourly employees may not, under any circumstances, work off the clock, e.g., during meal breaks or outside of the regular work schedule." (Lopez-Easterling Dep. 21; Lopez-Easterling Dep. Ex. 2 at CHARTER00001268.)

15. Charter utilizes an automated timekeeping system, referred to as "eTime", to record employee work hours.  (Lopez-Easterling Dep. 22-24.)

16. Lopez-Easterling attended training on Charter's eTime timekeeping system in June 2010.  (Lopez-Easterling Dep. 23-24; Lopez-Easterling Dep. Ex. 3 at CHARTER00000703)

17. Charter's eTime training provides that, at the end of every pay period, employees are instructed to carefully review and approve their timecard and to click "approve" if the timecard is accurate. (Lopez-Easterling Dep. 23-24; Lopez-Easterling Dep. Ex. 4 at CHARTER00001121; Lopez-Easterling Dep. Ex. 2 at CHARTER00001268.)

**C.     Lopez-Easterling Understood Charter's Timekeeping Policies And That She Was Required To Record And Be Paid For All Time Worked.**

18.     Lopez-Easterling's regularly scheduled shift varied throughout her employment with Charter, ranging from 8:30 a.m. to 5:30 p.m., from 8:00 a.m. to 5:00 p.m. and 9:00 a.m. to 6:00 p.m.  (Lopez-Easterling Dep. 15, 53.)

19.     Lopez-Easterling testified that "My understanding was that I get one full hour lunch."  (Lopez-Easterling Dep. 15-16.)

20.     Lunch time for employees working at the Vestavia Hills store were set up at 30-minute intervals, meaning one employee started lunch at 11:00 a.m., the next person at 11:30 a.m., and the next person at 12:00 p.m.  (Lopez-Easterling Dep. 75.)

21.     Lopez Easterling liked to take her lunch from 12:00 p.m. to 1:00 p.m. or 1:00 p.m. to 2 p.m.  (Lopez-Easterling Dep. 74-75.)

22.     Lopez-Easterling would clock in when she arrived at the Vestavia Hills location, clock out for lunch, clock back in at the end of her lunch break and, then clock out at the end of her shift.  (Lopez-Easterling Dep. 26-27.)

23.     Lopez-Easterling utilized Charter's timekeeping system, eTime, to clock in and clock out for the day and for her lunch break.  (Lopez-Easterling Dep. 22.)

24.     Lopez-Easterling testified that she understood that in the event that a non-exempt employee performs work during meal breaks or after the regular work schedule, the hours must be recorded on the electronic timecard and the employee would be compensated for that time. (Lopez-Easterling Dep. 66.)

25.     Lopez-Easterling understood that her payroll was run from the hours that she clocked in and clocked out of eTime.  (Lopez-Easterling Dep. 29.)

26.     Lopez-Easterling approved her time on a biweekly basis.  (Lopez-Easterling Dep. 68.)

27.     Lopez-Easterling testified that she understood that when she was approving her time, she was certifying that the hours she was recording were true and accurate.  (Lopez-Easterling Dep. 68.)

28.     Lopez-Easterling testified that "if there was a problem with eTime, I would let [Johnson] also know there was a problem with eTime."  (Lopez-Easterling Dep. 47.)

29.     When there was an issue with eTime or if Lopez-Easterling forgot to clock back in, Johnson would clock in for Lopez-Easterling or fix the issue.  (Lopez-Easterling Dep. 27-29, 48.)

30.     Lopez-Easterling testified that she was always paid for the hours that she put into eTime.  (Lopez-Easterling Dep. 29.)

31.     Lopez-Easterling testified that she was not aware of any supervisor rejecting the number of hours that she entered into the eTime system.  (Lopez-Easterling Dep. 72.)

32.     Lopez-Easterling testified that she understood that she would paid time and half for all hours that she worked over 40, and that was her understanding throughout her employment with Charter.  (Lopez-Easterling Dep. 13.)

33.     When she worked past the close of her shift, Lopez-Easterling would record that time as overtime and was paid for that time, even if she had not called Johnson to ask for permission to stay after the close of her shift.  (Lopez-Easterling Dep. 62-63.)

34.     Lopez-Easterling testified that she was paid overtime for all time worked after the close of her shift.  (Lopez-Easterling Dep. 31-32.)

35.     Lopez-Easterling earned approximately $18,229.09 in overtime while working at Charter from April 2010 through June 2014.  (Srivastava Decl. ¶ 3.)

**D.     Lopez-Easterling's Allegations Regarding Lunch Break Off-the-Clock Work.**

36.     Lopez-Easterling alleges that her lunch break was interrupted by other Charter employees who asked her to answer customer questions and/or assist new employees.  (Dkt. 10, ¶ 12.)

37.     Lopez-Easterling testified:

Q.     Were there ever days when you were able to take your entire one-hour lunch break uninterrupted?
A.     Yes, yes.
Q.     Okay. What would you do on those days?
A.     Just – I mean, if I brought my lunch, I eat my lunch and just sit there, play with my tablet, you know, just play with my phone.

(Lopez-Easterling Dep. 78.)

38.     Lopez-Easterling testified that the duration of the lunch break interruptions "varied from either less than 5 minutes to maybe 30 or more minutes depending on the issue," and she did not keep records of how long her lunch breaks were interrupted.  (Lopez-Easterling Dep. 81-82.)

39.     When asked whether there is any way for her to know how much time she spent on her lunch break helping customers, Lopez-Easterling testified:  "No, ma'am. There's – I mean, there's no way. I didn't record it."  (Lopez-Easterling Dep. 83.)

40.     Lopez-Easterling testified that "[m]ost of the time" when she had to help customers during her lunch break, Johnson was "not on site. She was either at the other locations with – you know, she had to be in the other locations."  (Lopez-Easterling Dep. 44-45.)  Lopez-Easterling agreed that if Johnson was not on site, then she could not see what Lopez-Easterling was doing during her lunch break.  (*Id*. at 45.)

6

41.     When asked, "Do you have an estimate as to how often you were interrupted when Nicole was offsite at Tuscaloosa or at any of the other offices," Lopez-Easterling answered, "Two or three times, like I stated earlier." (Lopez Easterling Dep. 114-115.)

42.     In response to the question, "So were your lunch breaks ever interrupted when Nicole [Johnson] was on site?" Lopez-Easterling testified, "If she was in a meeting, but that didn't happen often." (Lopez-Easterling Dep. 80.)

43.     Lopez-Easterling testified that she did not have an estimate as to how many times her lunch break was interrupted when Johnson was at Vestavia Hills.  (Lopez-Easterling Dep. 114.)

44.     Lopez-Easterling testified that she could not remember which weeks she had her lunch breaks interrupted more than once or twice.  (Lopez-Easterling Dep. 79.)

45.     Lopez-Easterling testified that she never emailed Johnson to tell her that she was coming in from her lunch break early to help a customer.  (Lopez-Easterling Dep. 84.) According to her, "I just went in, took care of the customer, and that was it."  (*Id.*)

46.     Lopez-Easterling also testified that she did not call Johnson before helping the customer to tell her that she was cutting her lunch break short.  (Lopez-Easterling Dep. 84). Likewise, she did not call Johnson afterwards to tell her that she had missed a portion of her lunch.  (*Id.*).

47.     Lopez-Easterling testified that there were times Johnson would have seen her working during her lunch break, but Lopez-Easterling did not know when or how often those times were.  (Lopez Easterling Dep. 165.)

48.     Lopez-Easterling testified as follows:

Q.     Do you remember what you were doing during those times that you say Nicole was there and saw you working through your lunch break?

7

A.      Just sitting there maybe eating my lunch or just sitting there already probably eating my lunch and I would just sit in the back room … because I didn't really go anywhere, so…

Q.      An employee would approach you during these times?

A.      They would come back and ask questions, yes.

Q.      Where was Nicole?

A.      She could either be probably on the phone, maybe doing report, doing balance – what you call that? – surprise cash could, you know, numerous things.

Q.      Do you know if she was listening to what the employee was saying to you?

A.      She may, she may not.

Q.      She might or she might not be?

A.      Uh-huh. (Witness nods head.)

Q.      Okay, so she might not know whether or not it's a personal conversation or a work conversation, right?

A.      Not sure. I mean…

Q.      You don't know?

A.      I don't know.

(Lopez-Easterling Dep. 166-67.)

49.      Lopez-Easterling further testified that she made Johnson aware that she had worked during her lunch break by "telling her that I had to help whatever the person it was. That's me telling her I had to work on my lunch – during my lunch or however you say it." (Lopez-Easterling Dep. 44.)

50.      Lopez-Easterling estimated that she had three to four conversations at some point between 2010 and 2014 with Nicole Johnson about customer interruptions during her lunch break.  (Lopez-Easterling Dep. 93-96.)

51.      Lopez-Easterling never tried to record any of the time she claimed she worked during her lunch break.  (Lopez-Easterling Dep. 92.)

52.      Lopez-Easterling never asked her supervisor if she could clock back in early from her lunch break when she interrupted her lunch break to help a customer. (Lopez-Easterling Dep. 72.)

53.     Lopez-Easterling did not ask her supervisor what she was supposed to do in those instances with respect to clocking in or clocking out.  (Lopez-Easterling Dep. 90.)

54.     Lopez-Easterling testified as follows:

Q.      Did you tell Nicole that you missed your lunch break to help the customer?
A.      I mean, I would tell her that they came and got me on my lunch, so I don't see where I needed to more in depth of, "Okay, this is my lunch, this is how much I missed." I mean, I was on my lunch, they came and got me, so – I mean, she's the supervisor. Would you as a supervisor?
Q.      So you didn't tell her that you had missed a portion of your lunch break?
A.      I mean, I would tell her I was at lunch – and they came and got me.
Q.      Did you ever say, I missed 5 minutes of my lunch break?
A.      No. I didn't go in depth on how many minutes. I just said they came and got me on my lunch.
Q.      So you never told her how much of your lunch break you were missing?
A.      No.
Q.      Did you ever ask her if you should put time down on eTime for that portion of your lunch break that you say you were missing?
A.      No.  I just assumed that she would handle it. I mean, it's not something I put in. Like I said, I couldn't change my time.  I can only clock in and clock out. So me asking her can I change it, that would have been – that would have been just a stupid question to ask if I can change it, because I can't change it.
Q.      So you didn't ask Nicole to change your time to reflect the time that you had spent on your lunch break?
A.      I wouldn't ask because I assumed that was her job.
Q.      Okay. So you didn't ask her?
A.      No, ma'am.

(Lopez-Easterling Dep. 97-99.)

55.     When asked whether she checked her eTime to see if those instances of her lunch had been changed to reflect additional work, Lopez-Easterling testified that there were times where she would check it, see that it hadn't been changed, and approve the time.  (Lopez-Easterlinng Dep. 101.)  In such instances, she did not alert her supervisor to the discrepancy. (*Id.*)

56.     Lopez-Easterling also testified that she "wasn't going to check my time sheet all the time" and she "didn't make it a habit to check it."  (Lopez-Easterling Dep. 100-101.)

57.     Lopez-Easterling testified that neither Johnson nor anyone else told her not to record time spent working during her lunch break.  (Lopez-Easterling Dep. 90.)

58.     Lopez-Easterling testified that she never sent an email to Johnson, any other supervisor, Human Resources or anyone asking to be paid the time that she says that she worked during her lunch break.  (Lopez-Easterling Dep. 164-165.)

59.     Lopez-Easterling did not go to Human Resources with questions regarding her pay or working through her lunch break. (Lopez-Easterling Dep. 50.)

60.     Lopez-Easterling did not use Charter's EthicsPoint hotline to report issues with her pay or working through her lunch break. (Lopez-Easterling Dep. 51.)

## III.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Chapman v. AI Transport*, 229 F.3d 1012, 1013 (11th Cir. 2000).   While the facts and all reasonable inferences drawn therefrom are to be viewed in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), plaintiff bears the burden of going outside of the pleadings and presenting admissible evidence demonstrating that facts exist that raise genuine issues of fact that should be reserved for trial.  *See Celotex Corp. v. Catratt*, 477 U.S. 317, 324 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250.  Summary judgment should be granted if the party with the burden of proof at trial fails to establish an essential element of her case.  *See Celotex*, 477 U.S. at 322.

**B.     Lopez-Easterling's FLSA Claim Fails As A Matter Of Law Because She Has Failed To Create a Genuine Dispute Of Material Fact As To Charter's Knowledge Of Any Alleged Off-The-Clock Work.**

An employee asserting an overtime claim "must show" that the employer "had actual or constructive knowledge of [the] overtime work." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1312-15 (11th Cir. 2007); *Kellar*, 664 F.3d at 177; *Gaines v. K-Five Const. Corp.*, 742 F.3d 256, 270-71 (7th Cir. 2014) (an employer has no obligation to pay for work it did not know about and had no reason to know about); *see also* 29 U.S.C. § 203(g), 29 C.F.R. § 785.11. For the reasons described below, Lopez-Easterling has failed to do so here.

**1.     Lopez-Easterling's Admitted Failure To Record Time Worked Defeats Her FLSA Claim As A Matter of Law.**

Charter has the right to require employees to keep track of their work time. *Lewis v. Keiser School, Inc.*, No. 11-62176-Civ, 2012 WL 4854724, at *3 (S.D. Fla. Oct. 12, 2012), *Schremp v. Langlade County*, No. 11-C-590, 2012 WL 3113177, at *2 (E.D. Wis. July 31, 2012). But "[w]hen [an] employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *See White v. Baptist Mem.Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012)[1]; *Contini v. United Trophy Mfg., Inc.*, No. 6:06-cv-432, 2007 WL 1696030, at *3 (M.D. Fla. June 12, 2007) (employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur); *Harvill v. Westward Comm'ns, LLC*, 311 F.Supp.2d 573, 584 (E.D. Tex. 2004) (granting summary judgment to employer where employee improperly failed to record time allegedly worked on her

---

[1] Where there is no on-point authority within the Eleventh Circuit, Charter has cited to analogous out-of-circuit decisions. *Fassina v. CitiMortgage, Inc., et. al.*, No. 2:11-cv-2901, 2012 WL 2577608 (N.D. Ala. July 2, 2012) (noting that unpublished Eleventh Circuit opinion and district court cases outside of the circuit, while not binding, were persuasive) (Proctor).

timesheets and failed to report that work to her supervisor).  Indeed, "ceasing to keep track of one's missed lunches does not solve the problem of not being reimbursed, but instead precludes the possibility of future reimbursement by preventing the employer from discovering the unpaid work."  *Berger v. Cleveland Clinic Found.*, No. 1:05 CV 1508, 2007 WL 2902907, at *13 (N.D. Ohio Sept. 29, 2007).  Consequently, "where an employee elects to under-report his or her work time, the employer is not liable for the failure to pay unreported overtime under the FLSA."  *Schremp*, 2012 WL 3113177, at *2.  *See generally Debose v. Broward Health*, No. 08-61411-CIV-MOORE, 2009 WL 4884535, at *9 (S.D. Fla. Dec. 17, 2009) (employer "cannot be held liable for an FLSA violation where an employee prevents it from learning about overtime work by actively attempting to deceive [it] by performing overtime work without detection"); *Gaylord v. Miami-Dade Cty.*, 78 F.Supp.2d 1320, 1325 (S.D. Fla. 1999) (an employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur).

As noted above, Lopez-Easterling understood Charter's policies required her to accurately report all hours worked, and there is no dispute that when Lopez-Easterling followed the policies she was paid for all hours recorded.  (SOF ¶¶ 25, 31, 35.)  Moreover, Lopez-Easterling does not offer evidence, or even allege, that anyone instructed her not to report all time worked or that anyone manipulated her time records.  *Lewis*, 2012 WL 4854724, at *3 (where employee clocked herself in and out and accounted for her own time, court was unwilling to attribute to employer's actual or constructive knowledge of work being performed, especially where employee did not argue that employer forced her to clock out and continue working through lunch); *Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40-bbc, 2013 WL 3777251, at *7 (W.D. Wis. July 19, 2013) (granting summary judgment where plaintiffs did not allege

defendants instructed them not to report overtime, told them to delete overtime that they reported or refused to pay them for reported overtime).

Thus, what happened here was not a "failure by [the employer]" to keep accurate records or properly pay overtime, but "a failure by [the employees] to comply with [the employer's] timekeeping system." *Brown v. Scriptpro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012); *Contini*, 2007 WL 1696030, at *3 (granting summary judgment where plaintiff did not follow the company's rules for being granted overtime). Consequently, Lopez-Easterling's FLSA claim fails as a matter of law. *See Contini,* 2007 WL 1696030, at *3 ("the court will not grant plaintiff relief…for unpaid overtime when it was his decision not to ask for the pay in the first place" and where plaintiff testified that he could have, but chose not to, ask supervisor for overtime pay which he was owed and that he was always paid overtime when he indicated on his time sheet the hours he worked); *see also Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (affirming judgment for employer in case in which plaintiff "testified in his deposition that he 'did not mention any unpaid overtime work to any store official prior to filing his complaint'"); *Von Friewalde v. Boeing Aerospace Operations, Inc.,* No. 3:00-cv-2057x, 2009 WL 2391400, at *8 (5th Cir. Aug. 4, 2009) (holding plaintiffs could not recover claims arising from "days on which [they] failed to inform their managers that they had been forced to stay … late").[2]

---

[2] The *Bailey v. Titlemax* decision is not to the contrary. 776 F.3d 797 (11th Cir. 2014). In *Titlemax*, Plaintiff's supervisor told him that TitleMax did not pay overtime, that there would be days that they would be working off the clock, and, for that reason, Plaintiff regularly worked off the clock. *Id*., at *799. The same supervisor repeatedly edited plaintiff's time records to report fewer hours than he worked. *Id.* Here, Lopez-Easterling testified that no one told her not to record time she spent working on her lunch break, that she was paid for all overtime that she did record, and that no one changed her time records. (SOF ¶¶ 34, 35, 58.) Additionally, Lopez-Easterling testified that this off-the-clock work occurred when Johnson was offsite and therefore

**2.** **Lopez-Easterling Lacks Any Other Basis On Which To Assert Charter Had Notice That She Allegedly Worked Off-The-Clock.**

Lopez-Easterling has no other basis on which to charge Charter with knowledge of her alleged uncompensated work.  To the contrary, Lopez-Easterling testified that the lion's share of her lunch break was performed when her supervisor was not on-site, severely restricting her ability to detect off-the-clock work. (SOF ¶ 41.)  And, on those occasions, she did not notify her supervisor that she was working during lunch.  *Harvill,* 311 F.Supp.2d at 584 (supervisor did not have personal knowledge of what hours employee worked where supervisor was generally only present at the office once a week).

At most, Lopez-Easterling states that she had 3-4 conversations with Johnson over the span of 4 years where she told Johnson that someone "came to get her" during her lunch break. (SOF ¶ 51.)  But the fact that Johnson may have known of three to four lunch interruptions, standing alone, fails to create a genuine issue of material fact as to whether Johnson knew that Lopez Easterling was working *off-the-clock*. *Schremp*, 2012 WL 3113177 at *4 (the fact that supervisors observed plaintiff performing work outside of his regular hours did not establish that the supervisors "knew that he was not being compensated for such time"); *Gaines*, 742 F.3d at 270 (noting that court could not make a reasonable inference that anybody knew plaintiff was performing pre-shift work based on the "simple fact" that supervisors may have seen plaintiff come to work early); *Darrikhuma v. Southland Corp.*, 975 F.Supp. 778, 783-4 (D. Md. 1997), *aff'd*, 129 F.3d 1258 (4th Cir. 1997) (although supervisors saw employee working on weekends, they did not know employee was working off the clock).

Here, there is no evidence that Lopez-Easterling informed management she was not

---

could not see Lopez-Easterling performing the work.  (SOF ¶ 41, 43.) Finally, Lopez-Easterling did not call or email Johnson to make her aware of the alleged lunch break work. (SOF ¶ 46, 47.)

reporting this time or that management knew she failed to do so in derogation of company policy. To the contrary, Lopez-Easterling admits that she did *not* tell Johnson (or anyone else) that she was not recording that time on her time sheets. (SOF ¶ 54.) Nor did she ask Johnson whether she should put time down on eTime for the portion of her lunch break that Lopez-Easterling claims that she was missing. (SOF ¶ 53-54, 59.) *See Contini,* 2007 WL 1696030, at *3 (granting summary judgment for employer where plaintiff "chose not to ask his supervisor for the…overtime pay which he was owed" and, as a result, employer had no knowledge that employee was owed overtime compensation); *Boelk*, 2013 WL 3777251, at *7 (granting summary judgment where plaintiffs had not alleged that they told any of their supervisors or managers that they were working during their lunches without reporting it); *Forrester*, 646 F.2d at 414 (affirming judgment for employer in case in which the plaintiff testified in his deposition that he "did not mention any unpaid overtime work to any store official prior to filing his complaint"); *Kellar*, 664 F.3d at 177-78 (holding employer had no knowledge of pre-shift work even though management was aware that employee was punching in early because management had no "reason to believe that" plaintiff was actually performing work after she punched in).[3]

Recognizing her dilemma, Lopez-Easterling claims to have "assumed" that it was *Johnson's* job to record any time Lopez-Easterling may have worked during lunch. Not only did Lopez-Easterling do nothing to confirm any such "assumption," but also it cannot be reconciled with Charter's timekeeping policies, which flatly state that it is the employee's responsibility to accurately record all time worked. (SOF ¶ 17.) Furthermore, Lopez-Easterling fails to explain how Johnson could have accurately adjusted Lopez-Easterling's time sheets, when Lopez-

---

[3] The same is true with respect to Lopez-Easterling's testimony that Johnson saw her talking to other employees during her lunch. In fact, as Lopez-Easterling admitted, Johnson could not have known whether any such conversation were work-related. (SOF ¶ 48.)

Easterling never told her the duration of any lunch break interruptions.  Finally, even on those occasions when Lopez-Easterling checked her time sheets and noticed that they were not accurate, she never availed herself of the opportunity to inform Human Resources through on-site Human Resources Representatives nor Charter's EthicsPoint hotline or online reporting system, about the alleged off-the-clock work.  *See generally Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 562 (S.D. Tex. 2011) (employee failed to show "that she ever complained about or reported overtime hours to [defendant]").  And, "[i]mputing constructive knowledge would be particularly inappropriate" when the evidence shows – as it does here – that Lopez-Easterling was paid for the overtime she reported.  *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1085 (N.D. Cal. 2007); *see also Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1326 (S.D. Fla. 1999) ("It is . . . unclear why [an employee] would follow appropriate procedures for reimbursement for some overtime assignments, but not others.").

In sum, Lopez-Easterling cannot raise any material dispute regarding Charter's knowledge of her allegedly uncompensated work.  Thus, her FLSA claim fails as a matter of law.

**C.     Lopez-Easterling's Speculation To Prove Her Hours Allegedly Worked During Her Lunch Breaks Is Insufficient To Defeat Summary Judgment.**

Lopez-Easterling bears the burden of proving that she performed overtime work for which she was not properly compensated.  *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277, n. 68 (11th Cir. 2008); *Brown*, 700 F.3d at 1230; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superceded on other grounds by statute*.  Moreover, "'under the FLSA, the employee bears the burden to show that his or her mealtimes were compensable work.'"  *White*, 699 F.3d at 874.  An employee "must establish as a matter of just and reasonable inference the amount an extent of her work in order to demonstrate that she was inadequately compensated under the FLSA.  *Ekokotu v. Federal Express Corp.*, 408 Fed. Appx. 331, 340

16

(11th Cir. 2011).  Lopez-Easterling is "'in the best position' to prove that [she] [was] working …

and '[t]o require … [the employer] [to] prove a negative—that the employee was not performing

"work" … would perversely incentivize employers to keep closer tabs on employees[.]'"  *See*

*White*, 699 F.3d at 874 (quoting *Hertz v. Woodbury County*, 566 F.3d 775, 783 (8th Cir. 2009)).

A plaintiff meets this burden only "with definite and certain evidence."  *Harvill,* 311

F.Supp.2d at 583 (citing *Reeves v. Int'l Tel. and Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir.

1980)); *Rose v. Digital Convergence.com Inc.*, No. 3:00-cv-2057X, 2001 WL 327843 (N.D. Tex.

Mar. 30, 2001) (quotations omitted) (plaintiff's affidavit averring she worked 50 hours per week

"does not constitute 'definite and certain evidence' of actual hours worked and is insufficient to

survive summary judgment"); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509,

521 (E.D. Tex. 2005) (holding that plaintiff, who admitted he could not quantify the amount of

time he worked and conceded he did not follow the employer's procedure to receive overtime,

did not provide "definite and certain" evidence he performed uncompensated work).  "A mere

averment of hours worked does not constitute definite and certain evidence of hours worked"

and, without more, is insufficient to withstand summary judgment.  *Schremp*, 2012 WL 3113177,

at *3; *see also Harvill v. Westward Comm'ns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (plaintiff's

assertion she worked 210 hours of unpaid overtime, without more, is insufficient as a matter of

law to establish her FLSA action).[4]

---

[4] Nor should the Court apply the "just and reasonable inference" test articulated by the Supreme
Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, at 686-87 (1946).  Plaintiffs may
take advantage of that test's burden-shifting framework only "where the employer's records are
inaccurate or inadequate."  *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 (11th Cir.
1982); *Etienne v. Inter-Cty. Sec. Corp.*, 1999 WL 380322 (11th Cir. 1999). Lopez-Easterling
does not allege Charter told her to inaccurately report her time, encouraged artificially low
reporting, or changed any of her hours that she did record; indeed, it is *her* failure to record hours
worked in derogation of company policy that accounts for any purportedly inaccurate records.
*Schremp*, 2012 WL 3113177, at *3 ("Where an employee maintains time records and there is no

Here, Lopez has failed to provide "definite and certain evidence" of hours worked.  At best, she could only surmise that she "rarely" worked during lunch when her supervisor Johnson was on-site, and that she worked through portions of "two or three" lunch breaks a week when Johnson was off-site.  Furthermore, she could not provide a "definite" estimate as to how long she worked off-the-clock, testifying instead to a hopelessly vague range of "either less than 5 minutes to maybe 30 or more minutes depending on the issue."  (SOF ¶ 39.)  Moreover, Lopez-Easterling kept no records of how long her lunch breaks were interrupted. *Id*. Under these circumstances, no reasonable jury could determine whether and how long Lopez-Easterling worked through lunch. *Santana v. RCSH Operations, LLC,* No. 10-61376-CIV, 2012 WL 463822, at *5 (S.D. Fla. Feb. 13, 2013) (summary judgment for employer warranted where plaintiff was unable to testify as to how many times or how many hours he was owed compensation due to working off the clock and where plaintiff testified that he had no written records or other documentary evidence to evidence when he worked without pay or the number of unpaid hours he worked).[5]

*Jackson v. Corrections Corp. of Am.*, No. 14-11010, 2015 WL 1446904, at *5 (11th Cir. April 1, 2015), is instructive.  There, the Eleventh Circuit found that Plaintiff "failed to meet even the relaxed burden of produc[ing] sufficient evidence to show the amount an extent of that

---

indication that the employer instructed the employee not to accurately report his time, the accurate time records will establish the amount of damages, and the general rule that precludes recovery of uncertain or speculative damages is appropriate.").

[5] Moreover, when an FLSA claim "concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." *Lewis*, 2012 WL 4854724, at *3 (citing *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 692 (1946). "[M]ost courts have found daily periods of approximately 10 minutes to be *de minimis*." *Id.* (citing *Burks v. Equity Group-Eufala Div., LLC*, 571 F.Supp.2d 1235, 1247 (M.D. Ala. 2008)).  Lopez-Easterling testified that there were certain weeks (again undefined) where helping the customer took less than five minutes or between five and ten minutes.  (SOF ¶ 39).  For these weeks, the time Lopez-Easterling spent assisting customers during her lunch is *de minimis* as a matter of law, and her claims fail for that reason as well.  *Id.*

work as a matter of just and reasonable inference." *Id.* In *Jackson*, the Court held that Plaintiff "never stated with any clarity or precision the number of hours she allegedly worked, the amount or nature of that work…when the work was completed, or anything else that would assist a factfinder in approximating [plaintiff's] unpaid overtime." *Id.* Because Plaintiff provided "vague and contradictory assertions concerning the number of hours she worked [off the clock]," Plaintiff failed to create a genuine issue of material fact about whether she performed work for which she was not paid. *Id.*; *See also Golden v. World Sec. Agency, Inc.*, 884 F.Supp. 2d 675, 700 (N.D. Ill. 2012) (granting summary judgment where plaintiffs provided no foundational testimony or other evidence regarding how estimates of overtime wages supposedly due were calculated and provided no information regarding days, time or number of hours worked); *Millington v. Morrow Cty. Bd. of Comm'rs*, No. 2:06-cv-347, 2007 WL 2908817, at *7 (S.D. Ohio Oct. 4, 2007) ("Plaintiff's bare allegation that he worked an average of five hours every week at home [was] insufficient to meet his burden of proof. Mere conclusory, factually unsupported allegations are insufficient to withstand a motion for summary judgment."). The same is true here.

## II.     CONCLUSION

For the reasons set forth above, the Court should grant Charter's Motion and enter summary judgment for Defendant on Plaintiff Karen Lopez-Easterling's claims.

Dated: June 29, 2015

Respectfully submitted,

CHARTER COMMUNICATIONS, LLC
By:   s/ Rita Srivastava
        *One of Its Attorneys*

Stephanie H. Mays
Maynard, Cooper & Gale PC

19

1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
T: 205-254-1844
F: 205-254-999

Sari M. Alamuddin (pro hac vice)
Rita Srivastava (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, Illinois  60601
T: 312-324-1000
F: 312-324-1001
salamuddin@morganlewis.com
rsrivastava@morganlewis.com

*Attorneys for Defendant Charter*
*Communications, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 29th day of June, 2015, a true and correct copy of the foregoing motion was filed with the Clerk of the Court using the ECF filing system which sent electronic notification to all counsel of record.


<u>*s/ Rita Srivastava*</u>
*Attorney for Defendants*