# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **KAREN LOPEZ-EASTERLING,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:14-cv-01493-RDP** |
| | } | |
| **CHARTER COMMUNICATIONS, LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

### I.      Introduction

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 25), filed June 29, 2015.  The Motion is fully briefed and supported by the parties' evidentiary submissions.  (Docs. # 25, 26, 27, 28, 31).  In this case, Plaintiff attempts to recover overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, for uncompensated work performed during her lunch break.  Defendant contends Plaintiff's claim fails because she has not shown Defendant had knowledge of unpaid work, and has presented insufficient evidence to survive summary judgment.  After careful review, the court disagrees and concludes that Defendant's Motion is due to be denied.

### II.     Relevant Undisputed Facts[1]

Defendant hired Plaintiff to work in its Dispatch Department at its Vestavia Hills, Alabama store in April 2010.  (Doc. # 26-3 at p. 12).  In October 2010, Defendant promoted

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff to Front Counter Lead at the Vestavia Hills store.  (*Id.* at p. 14).  Plaintiff remained in this position until Defendant terminated her employment in June 2014.  (*Id.* at p. 121).  As a Front Counter Lead, Plaintiff had various responsibilities such as selling Defendant's services, taking and processing payments, and helping customers who visited the store resolve problems and issues.  (*Id.* at p. 14).  Although Plaintiff was in a "lead" position, Defendant classified her as an hourly paid, non-exempt employee for FLSA purposes.  (Doc. # 10 at ¶ 6).  Defendant also classified Plaintiff as an hourly, non-exempt employee during her time in the Dispatch Department.  (*Id.*).

Defendant utilizes an automated timekeeping system called "eTime" to record employees' work hours.  (Doc. # 26-3 at pp. 22-24).  Plaintiff was trained on using eTime in June 2010.  (*Id.* at pp. 23-24; Doc. # 26-6 at CHARTER00000703).  Defendant's eTime training provides that at the end of each pay period employees are instructed to review and approve their timecard, and to click "approve" in the eTime system if the timecard is accurate.  (Doc. # 26-7 at CHARTER00001121; *see* Doc. # 26-5 at CHARTER00001268).

Plaintiff worked five days a week.  (Doc. # 26-3 at p. 15).  While the exact hours of her shifts varied (*e.g.*, 8:00 a.m. to 5:00 p.m., or 9:00 am. to 6:00 p.m.), Plaintiff's regular schedule was an eight-hour workday with an unpaid hour of lunch.  (Doc. # 26-3 at pp. 15-16, 53; Doc. # 10 at ¶ 11).  When she arrived at the store, Plaintiff would clock in with eTime, clock out for lunch, clock back in at the end of lunch, and clock out at the end of her shift.  (Doc. # 26-3 at pp. 26-27).  Defendant paid Plaintiff for the hours recorded on eTime, and Plaintiff understood that her payroll was run from the hours she clocked in and out of with eTime.  (*Id.* at p. 29).  Additionally, Plaintiff agrees that she understood if a nonexempt employee performs work

during meal breaks or before or after the regular work schedule, those hours must be recorded on an electronic timecard and the employee would be compensated for that time.  (*Id.* at p. 66).

The Employee Handbook Plaintiff received set forth Defendant's "practice and obligation to pay non-exempt (hourly) employees for any and all hours worked, including overtime."  (Doc. # 26-5 at CHARTER00001268; Doc. # 26-3 at pp. 19-21).   The Handbook also provided: "Hourly employees must maintain an accurate record of *all hours worked each day and all time off taken*.   Hourly employees may not, under any circumstances, 'work off the clock' (e.g., during meal periods or outside of the regular work schedule)."   (Doc. # 26-5 at CHARTER00002168 (emphasis in original); Doc. # 26-3 at p. 21).   On April 12, 2010, Plaintiff signed an Employee Acknowledgment Form, which states: "I have received the Handbook and Code of Conduct, and I understand that it is my responsibility to read and comply with the policies contained in it and any revisions made to it."  (Doc. # 26-4; Doc. # 26-3 at pp. 19-20).

Plaintiff also understood that she would be paid time-and-a-half for all hours over forty that she worked.  (Doc. # 26-3 at p. 13).  Nicole Johnson (Plaintiff's supervisor) testified that supervisors at Defendant's stores, including her, typically pre-approve overtime for employees. (Doc. # 26-8 at pp. 21-24).  Defendant's Employee Handbook also provides that "[o]vertime, in all cases, must be authorized in advance by a supervisor."   (Doc. # 26-5 at CHARTER00001268).  But, Linda Polanco, Defendant's Human Resources ("HR") Manager, testified as follows regarding Defendant's policy: when "an hourly employee performs work during a meal break or before or after the regular work schedule and failed to obtain advanced authorization from the supervisor, the employee must still report all of the hours worked and will be compensated."  (Doc. # 28-1 at p. 30).  Indeed, Johnson stated, "if there is overtime on the system, [an employee working unauthorized time will] still get paid for it," and she would speak

with that employee at a later time about the failure to obtain authorization. (Doc. # 26-8 at pp. 22-23). Plaintiff testified that when she worked past the close of her shift, she recorded and was paid for that time as overtime, even if she did not ask Johnson in advance for permission to stay after her shift. (Doc. # 26-3 at pp. 31-32, 61-63).

But Plaintiff claims the situation was different when other employees interrupted her lunch break and she was required to work extra time. Plaintiff says she was not compensated for that time even though the interruptions occurred two to three times each week when she was called upon to answer customer questions or assist new employees. (Doc. # 26-3 at pp. 78-79). Plaintiff estimated that these interruptions "varied from either less than 5 minutes to maybe 30 or more minutes depending on the issue." (Doc. # 26-3 at pp. 81-82). A one-time co-worker of Plaintiff, Gina Hinkle (who worked for Defendant at Vestavia Hills as a customer service representative from May 2011 to June 2012), submitted a declaration saying she "know[s] that at least two or three times a week, I and my co-workers, including [two other employees], would get [Plaintiff] to come help us with a customer for one reason or another. We frequently asked her questions during her meal break." (Doc. # 28-12 at ¶ 6). Hinkle also declared that the Johnson instructed the Vestavia Hills employees "that if the lobby was full that we either could not take a meal break at all or it was to be shortened." (*Id.* at ¶ 8).

Johnson oversaw some of Defendant's other stores, and therefore was not present at the Vestavia Hills location each day. (Doc. # 26-3 at p. 17; Doc. # 26-8 at pp. 8-9). The number of days Johnson worked at the Vestavia Hills store varied week-to-week because she traveled to other stores at least once per week and spent the entire day there. (Doc. # 26-3 at p. 17; Doc. # 26-8 at pp. 8-9). As a "lead," Plaintiff was the backup to store supervisor Nicole Johnson and was in charge when Johnson was not present. (Doc. # 26-3 at p. 16; Doc. # 28-1 at pp. 55-56).

4

Therefore, when a supervisor's assistance was needed to answer customers' questions (*i.e.*, payment arrangements, turning on cable service, credit checks, and waiver of installation fees), and Johnson was not available, Plaintiff would have to answer those questions—including during her lunch break.  (Doc. # 26-3 at pp. 77-78; Doc. # 28-1 at p. 56).  Plaintiff admits Johnson could always be reached by phone if needed; however, she testified that employees rarely called Johnson about questions when she was off site, and instead came to Plaintiff.  (Doc. # 26-3 at pp. 17-18, 44-45, 80-81).

Plaintiff also has said her lunch breaks were infrequently interrupted when Johnson was on site, such as when Johnson was in a meeting.  (Doc. # 26-3 at p. 80).  During her deposition, Plaintiff was unable to estimate how many times her lunch break was interrupted when Johnson was present.  (*Id.* at p. 114).  Similarly, Plaintiff could not remember which weeks she had her lunch breaks interrupted more than once or twice.  (*Id.* at p. 79).  Because Johnson was off-site "[m]ost of the time" that Plaintiff was called upon to help customers during her lunch break, Plaintiff admits Johnson could not see what she was doing during her lunch break.  (*Id.* at pp. 44-45).

Plaintiff never emailed Johnson to say that she was coming in from her lunch break early to help a customer.  (Doc. # 26-3 at p. 84).  Likewise, Plaintiff did not call Johnson prior to (or after) helping a customer during her lunch break to inform Johnson she was cutting her break short.  (*Id.*).  Instead, Plaintiff "just went in, took care of the customer, and that was it."  (*Id.*).  But, when Johnson was present, Plaintiff says Johnson occasionally would have seen Plaintiff working during her lunch break (even though Plaintiff does not know how many times Johnson actually did see her).  (Doc. # 26-3 at pp. 165-67).  Hinkle also "recal[led] occasions" when Johnson walked by, saw Plaintiff helping customers at the front desk during her meal break, and

said nothing.   (Doc. # 28-12 at ¶ 7).   Plaintiff does not know the extent to which Johnson actually knew Plaintiff worked during her lunch breaks.  (Doc. # 26-3 at pp. 166-67).

In any event, Plaintiff testified that she did make Johnson aware that she had worked during her lunch break by "telling her that [Plaintiff] had to help whatever the person it was. That's me telling her I had to work on my lunch – during my lunch or however you say it." (Doc. # 26-3 at p. 44).   It is unclear from Plaintiff's deposition testimony the exact number of times that she claims this type of conversation took place.  Plaintiff testified she told Johnson about customer interruptions during her meal time at least three or four times between 2010 and 2014.  (*Id.* at pp. 93-96, 106; *see also id.* at p. 95 ("it could have been more than three or four, because I was there for quite a while").  (*But see id.* at p. 36) (Plaintiff testifying she let Johnson "know several times that I was interrupted on my lunch.")).

Johnson agrees that she "would be the first in the chain of command for [Plaintiff] in regards to any issues."  (Doc. # 26-8 at p. 27).   Likewise, the Employee Handbook indicated that Plaintiff was to follow the chain of command and go first to her supervisor in the event of a problem.   (Doc. # 26-3 at pp. 33-35; Doc. # 26-5 at CHARTER00001268).   Nevertheless, Plaintiff testified that she knew, if needed, Johnson had her own supervisor, and Plaintiff could contact Defendant's out-of-state HR representative for the Vestavia Hills store.  (*Id.* at pp. 34, 49-50).   Defendant also had a hotline called "EthicsPoint" that Plaintiff could call with issues; however, Plaintiff testified that it was her understanding that phone number was for issues such as harassment.  (*Id.* at p. 51).

Johnson denies seeing Plaintiff working during her lunch.   (Doc. # 26-8 at p. 26). Johnson stated that if she saw somebody working during their unpaid meal break, she would ensure that person was paid for that work.  (*Id.* at pp. 24, 26-27).   And, Johnson denies that

Plaintiff ever told her about customer interruptions during lunch breaks. (*Id.* at pp. 25-26). Johnson also contradicted Hinkle's declarations by testifying she expected employees not to leave their lunch break to serve customers, and, "if needed," she would "jump in and help." (Doc. # 26-8 at pp. 59-60). Linda Polanco testified she understood "that we [Defendants] were not made aware of any of the overtime that was not paid by any mechanism by -- by Karen." (Doc. # 28-1 at p. 72).

Plaintiff stated she sometimes would forget to clock back in from lunch, and Johnson would let her know she had forgotten. (Doc. # 26-3 at p. 27). Plaintiff understood it to be Johnson's responsibility to make the corrections in eTime, which Johnson did. (*Id.* at p. 28)). Johnson issued Plaintiff an "occurrence" on at least three occasions for the following reasons: clocking in late following a lunch break; ending her shift early due to an illness; and leaving work to take care of her sick son. (*Id.* at pp. 90-92).

Plaintiff did not record (in eTime or by other means) the time she spent helping customers or doing work during her lunch break, and says the time she worked doing that varied ("from either less than five minutes to maybe 30 or more minutes"). (Doc. # 26-3 at pp. 81-83, 92, 115). No one, including Johnson, told Plaintiff not to record the time she worked during her lunch break. (*Id.* at p. 90). Johnson did testify, however, that she remembered "letting [Plaintiff] know that she's supposed to clock in and clock out for all lunches and breaks." (Doc. # 26-8 at p. 60). Plaintiff testified she did not believe she was allowed to clock in early from lunch without permission. (Doc. # 26-3 at p. 71). She understood "that [she] ha[s] . . . an hour lunch and we are to take the hour, so [she] didn't believe that [she] could just go in there and take it upon [her]self to just clock back in." (*Id.*). She never asked anyone if she could clock in early from lunch; nor did she ask Johnson what to do regarding clocking in and out during the lunch

hour.  (*Id.* at pp. 71-72, 89-90).  Furthermore, Plaintiff did not go to Defendant's out-of-state HR representative for Vestavia Hills concerning whether to record on eTime the hours worked during her lunch break.  (*Id.* at p. 72).

Defendant's eTime training manual does not inform employees, with any specificity, about work performed during an unpaid meal break, including clocking in and out of work for lunch. (Doc. # 28-1 at pp. 26-29; *see* Doc. # 28-3).  Similarly, the Employee Handbook does not inform employees how to clock in and out of a lunch break.  (Doc. # 28-1 at pp. 25-26; *see generally* Docs. # 26-5, 28-2, 28-3).   Linda Polanco testified that Defendant's corporate timekeeping policy does not specify how an employee uses the eTime system to report work performed during the lunch hour to ensure that employee is paid.  (Doc. # 28-1 at pp. 36-37).  Nonetheless, Polanco testified that employees were expected to clock back into eTime if they were working during their meal break.  (*Id.* at p. 50).  Polanco also testified that if employees were not able to clock back into eTime at lunch for some reason, "then at the end of the week, my expectation would be that the employee would bring that to the attention of the supervisor and the supervisor then would understand that and make sure that that was correctly captured in [eTime] before the[ employee] approved it."   (*Id.*).   According to Polanco and Johnson, Defendant seeks to ensure that employees understand its policy and that there is a shared responsibility between employer and employee to keep accurate records and make sure those records are accurate.  (Doc. # 28-1 at pp. 22-23, 69; Doc. # 26-8 at p. 24).

Plaintiff would clock in and out from work every day, and "[f]rom time to time" review her recorded hours for accuracy.  (Doc. # 26-3 at pp. 67-68).  Alternatively, when eTime was down, Johnson would clock in for her and fix the issue, and Plaintiff was paid for that time.  (*Id.* at p. 48).  Further, Plaintiff approved her time on a biweekly basis, and testified she understood

that by approving her time, she certified the recorded hours were true and accurate.  (*Id.* at p. 68).  Plaintiff admits that she occasionally checked eTime to see if it reflected the times she told Johnson she had worked during meal breaks and make sure the changes were made.  (*Id.* at pp. 100-01).  Plaintiff says on those occasions the time recorded had not been changed, but she approved the time record anyway.  (*Id.*).

Plaintiff could not herself revise or change the hours she entered into eTime to reflect the hours she actually worked while clocked out.  (Doc. # 26-3 at pp. 69-70).  Polanco admitted Defendant has a payroll adjustment form which is available only to HR, not hourly employees.  (Doc. # 28-1 at p. 38).  Nevertheless, she says, employees "would be told by their supervisor and by HR that there was a mechanism for them to have corrections entered on their paycheck."  (*Id.*).  Plaintiff did not alert Johnson or Human Resources regarding these alleged discrepancies, and never asked to be paid for the time worked during her lunch.  (Doc. # 26-3 at pp. 50-52, 101-02, 164-65).

Finally, Johnson was trained about timekeeping requirements under the FLSA.  (Doc. # 26-8 at pp. 16-17).  And, Polanco agreed at her deposition that "one of the aspects of the supervisor's responsibilities under [eTime] is to have a dialogue with the nonexempt employee to make sure that the employee is paid for all hours worked."  (Doc. # 28-1 at pp. 17-18).  "If the supervisor had an awareness that information in [eTime] looked inaccurate to them based on their understanding of the person's shift that week or communication the employee may have had with them, then, yes.  I would have an expectation that they would question their employee."  (*Id.* at p. 19).

III.     **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v.*

*Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV.    Analysis

The FLSA mandates that an employer may not employ its employee for a longer than forty-hour workweek unless that employee receives overtime compensation at a rate not less than

one and one-half times the regular rate.  29 U.S.C. § 207(a)(1).  An employer covered by the FLSA is responsible for compensating its employees for work which it "suffers or permits."  29 U.S.C. § 203(g).  "It is not relevant that the employer did not ask the employee to do the work," or why the employee did the work.  *Allen*, 495 F.3d at 1314.  "[I]f the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Id.* (quoting *Reich v. Dept. of Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (citing 29 C.F.R. § 785.11)) (change in *Allen*).

To establish an FLSA claim, a plaintiff must prove that her employer suffered or permitted her to work without compensation.  Accordingly, Plaintiff must demonstrate that (1) she worked overtime without compensation, and (2) Defendant knew or should have known of the overtime work.  *Allen*, 495 F.3d at 1314-15 (citations omitted); *Gaylord v. Miami-Dade Cty.*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("*Mt. Clemens*"); *Reich*, 28 F.3d at 1082.  If Plaintiff successfully makes this showing, the burden shifts to the employer to negate her claim with proper records.  *Bridges v. Amoco Polymers, Inc.*, 19 F. Supp. 2d 1375, 1378 (S.D. Ga. 1997) (citing *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 (11th Cir. 1982)).

Defendant advances two arguments in support of its summary judgment motion.  First, Defendant contends that Plaintiff's FLSA claim fails as a matter of law because there is no genuine issue of material fact concerning its knowledge of any uncompensated work.  In support of that argument, Defendant points to Plaintiff's admitted failure to record time worked in eTime, and asserts that Plaintiff cannot show Defendant had notice of her working off-the-clock. Second, Defendant contends Plaintiff's claim is based upon mere speculation and insufficiently

certain evidence about her uncompensated time.  The court disagrees and addresses both these arguments below.

### A.    There Is a Genuine Dispute of Material Fact Concerning Defendant's Knowledge of Off-The-Clock Work

To prevail on her FLSA claim, Plaintiff must establish that Defendant knew or should have known of the overtime work through actual or constructive knowledge.  *Allen*, 495 F.3d at 1314-15; *see also Reich*, 28 F.3d at 1081-1082.  "An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond h[er] shift."  *Allen*, 495 F.3d at 1319 (citation omitted).  "An employer who is armed with [knowledge that an employee is working overtime] cannot sit idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation."  *Newtown v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)).  The existence of actual or constructive knowledge is a question of fact.  *Reich*, 28 F.3d at 1082.  The court separately addresses the issues raised by the parties related to actual or constructive knowledge.

### 1.    Actual Knowledge

Here, even though some of Plaintiff's evidence is at times contradictory, Plaintiff has presented (even if barely) substantial evidence suggesting Defendant had actual knowledge of her alleged unpaid overtime.  (*E.g.,* Doc. # 26-3 at pp. 44, 93-96, 106).  Although Johnson has disputed that she was ever told of Plaintiff's uncompensated work, the court must view the facts in the light most favorable to Plaintiff.  (*See* Doc. # 26-8 at p. 26); *see Allen*, 495 F.3d at 1314.  A review of the Rule 56 record demonstrates that there is a conflict in the evidence as to a material fact (*i.e.*, whether Defendant had knowledge of Plaintiff's uncompensated overtime

work).  At their core, Defendant's arguments, at least implicitly, suggest that Johnson's version of the events makes more sense than Plaintiff's.  But while judging the credibility of witnesses is an important task in resolving conflicting testimony, it is a job that is decidedly (and emphatically) left for a jury.  *See Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012) ("Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper.") (citation omitted).

Defendant notes that Plaintiff occasionally reviewed her hours and, every two weeks, accepted them without protest.  (Docs. # 26, 31).  Although Plaintiff's eTime entries generally reflect that she worked only the eight hours each day, they occasionally include after-hours overtime (when recorded) for which Plaintiff was paid.  (Doc.# 26-3 at pp. 31-32, 61-63).  Therefore, Defendant reasons that Plaintiff is estopped from now requesting additional compensation.  (Docs. # 26, 31).

It is true that generally "[a]n employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur." *Gaylord*, 78 F. Supp. 2d at 1325 (citing *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972); *Newtown*, 47 F.3d at 748-49; *Davis v. Food Lion*, 792 F.2d 1274, 1277-78 (4th Cir. 1986); *Forrester*, 646 F.2d at 434).  Likewise, "[t]here is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it."  *Allen*, 495 F.3d at 1319 (citing *Forrester*, 646 F.2d at 414).  And, "where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer . . . of the overtime work, the employer's failure to pay for the overtime hours is *not* a violation of" the FLSA.  *Harvill v. Westward Commcns., LLC*, 311 F. Supp. 2d 573, 583 (E.D. Tex. 2004) (emphasis in original).  "However, in *Allen*, the Eleventh

Circuit upheld the district court's grant of summary judgment only against those plaintiffs who testified at deposition that they had not informed their supervisors of their overtime work." *Alston v. Infirmary Health Hosps., Inc.*, No. 11-550, 2012 WL 5035196, at *7 (S.D. Ala. Oct. 18, 2012) (citing *Allen*, 495 F.3d at 1319-22).   In this case, Plaintiff claims just the opposite—she asserts that her supervisor, Johnson, knew of her allegedly unpaid work.

The Eleventh Circuit's recent opinion in *Gilbert v. City of Miami Gardens* is on point. 625 Fed. Appx. 370 (11th Cir. 2015) (*per curiam*).   There, as here, the plaintiff was responsible for preparing her own timesheets and recording her own overtime, which she dutifully did until employer policy changed and required preapproval of overtime work. *Id.* at 371.   The employee told her supervisors she had been arriving early to work, leaving late, and working through lunch. *Id.* "She testified that they did not pay or offer to pay her for that time." *Id.* After a jury trial, the district court judge granted judgment as a matter of law in favor of the employer, primarily on the basis that "Gilbert filled out her own timesheets, that she rarely documented overtime work, and that when she did mark down more than eight hours of work in a day, the City paid her for it." *Id.* at 373.   The Eleventh Circuit reversed, distinguishing cases where an employee is estopped from claiming overtime from those in which an employee claims overtime but did not record unpaid, compensable work. *Id.*   Specifically, the Eleventh Circuit found *Gilbert* "different from our predecessor Court's decision in *Brumbelow*." *Gilbert*, 625 Fed. Appx. at 373 (distinguishing *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972)). In *Brumbelow*, the former Fifth Circuit "found no FLSA violation when an employee worked overtime but falsely reported to her employer that she only worked eight hours a day." *Gilbert*, 625 Fed. Appx. at 373.   "But [the plaintiff in *Brumbelow*] worked at home, so her employer

could not see how long she worked."[2]  *Id.*  By contrast, here (like in *Gilbert*), Plaintiff's "former coworker[] testified that it was obvious to the office that she worked overtime."  *Id.* at 373-74; (Doc. # 28-12 at ¶ 6).[3]

Based upon the Rule 56 record before the court, it is for a jury to determine whether Defendant had actual knowledge of Plaintiff's alleged unpaid overtime work.

## 2.    Constructive Knowledge

Plaintiff has also established that a genuine question of material fact exists regarding whether Defendant had constructive knowledge of Plaintiff's uncompensated overtime work. Plaintiff testified that Johnson saw her working during lunch.  (Doc. # 26-3 at pp. 165-67). Hinkle's declaration supports Plaintiff's position.  (Doc. # 28-12 at ¶ 7).  Defendant disputes the notion that Johnson should have realized Plaintiff was clocked out during this work, but that argument ignores the pertinent case law in this Circuit.

---

[2] Defendant also points the court to *Jackson v. Corrs. Corp. of Am.*, 606 Fed. Appx. 945, 947, 949, 953 (11th Cir. 2015) (*per curiam*).  In *Jackson*, the Eleventh Circuit upheld summary judgment in favor of the employer because the employee did not record on her timesheets allegedly unpaid overtime.  *Id.* at 947, 949, 953.  But, in *Jackson*, like in *Brumbelow*, most of the employee's purported overtime work was performed at the employee's home—away from her place of employment.  *See id.* at 947.  Here, all of Plaintiff's uncompensated overtime claims is for onsite work.

[3] To be sure, Defendant has a policy that requires overtime work to be preapproved.  While such policies tend to be allowed, some courts have disfavored them as attempts to discourage overtime work.  *See, e.g.*, *Fletcher v. Universal Tech. Inst., Inc.*, No. 05-585, 2006 WL 2297041, at *6 (M.D. Fla. June 15, 2006) ("Clearly, the Defendants attempted to discourage instructors from working overtime by telling instructors that they should not work overtime unless it was authorized.").  This court will leave it to the academics to debate the reasonableness of such policies.  Suffice it to say here that the existence of Defendant's policy, coupled with other evidence, creates a genuine question of material fact as to Defendant's knowledge.  First, Defendant requires preapproval of work. (Doc. # 26-8 at pp. 21-24; Doc. # 26-5 at CHARTER00001268).  Second, the Employee Handbook stated, "Hourly employees may not, under any circumstances, work 'off the clock' (e.g., during meal periods or outside of the regular work schedule.)".  (Doc. # 26-4 at CHARTER00001268).  Third, Plaintiff's co-worker stated that Johnson instructed the Vestavia Hills employees, including Plaintiff, that "if the lobby was full," the employees could not take a lunch break or must shorten it.  (Doc. # 28-12 at ¶ 8).  Fourth, Plaintiff received citations for not strictly complying with clocking in and out on eTime.  (Doc. # 26-3 at pp. 90-92).  Fifth, the forms that Plaintiff could use to change her recorded hours were only available to Defendant's HR, and the Vestavia Hills HR representative was located in a different state.  (Doc. # 26-3 at pp. 49-50; Doc. # 28-1 at p. 38).  Finally, Defendant's eTime materials, Employee Handbook, and training are unclear about how an employee is to handle the recording of time worked during a clocked out meal period.  (*See* Docs. # 26-5, 26-7, 28-3).  A jury could indeed draw a reasonable inference from all of this evidence that Plaintiff felt discouraged to record (or go back and add to) her overtime work performed without preapproval based on Johnson's instructions, Defendant's policy, and the lack of clarity and difficulty in altering recorded hours.  *Cf., e.g.*, *Allen*, 495 F.3d at 1317; *Gilbert*, 625 Fed. Appx. at 373.

The Eleventh Circuit has found that "employer's knowledge is measured in accordance with [its] duty . . . to inquire into the conditions prevailing in his business." *Allen*, 495 F.3d at 1319 (citations omitted). "An employer 'does not rid [itself] of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates . . . . The cases must be rare where prohibited work can be done . . . and knowledge or the consequences of knowledge avoided.'" *Reich*, 28 F.3d at 1082 (quoting *People ex rel. Price*, 121 N.E. at 476). A court "need only inquire whether the *circumstances* . . . were such that the employer either had knowledge [of overtime hours being worked] or else had 'the opportunity through reasonable diligence to acquire knowledge.'" *Id.* (emphasis and changes in original); *see also Newton*, 47 F.3d at 749 (reiterating that "[i]n *Brumbelow*, we acknowledged that an employee would not be estopped from claiming additional overtime if '[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate.'" (quoting *Brumbelow*, 462 F.2d at 1327)).

Our Circuit has held that an "employer's knowledge is measured in accordance with [its] duty . . . to inquire into the conditions prevailing in his business." *Allen*, 495 F.3d at 1319 (quoting *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) (quoting *People ex rel. Price v. Sheffield Farms-Slawson-Decker Co.*, 225 N.Y. 25, 121 N.E. 474, 476 (1918))) (internal quotation marks omitted). Thus, Defendant's argument—that Plaintiff is estopped from seeking overtime pay because she did not ensure Johnson (or others in Defendant's employ) understood she was not being paid for working during lunch overlook Defendant's duty to inquire into the conditions in its Vestavia Hills office—is off the mark. Plaintiff testified she made statements to Johnson that someone "came to get her" during lunch, and that Plaintiff thought she had communicated effectively to Johnson that she performed work during lunch.

(Doc. # 26-3 at pp. 36, 44, 93-96, 106).   Citing cases from outside the Eleventh Circuit, Defendant asserts that the fact that Johnson may have known about lunch interruptions is not enough to create a genuine issue of material fact.   (Doc. # 26 at 14).   That assertion is mistaken. Our court of appeals has made clear that if a supervisor is aware of information suggesting that an employee is working off the clock, there is a duty to inquire about those conditions.

A reasonable jury could conclude that Johnson was often absent from the Vestavia Hills store.   (Doc. # 26-3 at p. 7; Doc. # 26-8 at pp. 8-9).   The Rule 56 evidence also suggests that it was not an infrequent occurrence for there to be interruptions of Plaintiff's lunch break while she was left in charge.   A reasonable jury could also find that Plaintiff (at least occasionally) told Johnson of these occurrences.   Thus, Johnson (on behalf of Defendant) had a duty "to inquire into the conditions" concerning her subordinates at Vestavia Hills, including whether they had performed work at lunch. *Allen*, 495 F.3d at 1319 (citations omitted); *see also Reich*, 28 F.3d at 1083 ("an employer is not relieved of the duty to inquire into the conditions prevailing in his business 'because the extent of the business may preclude his personal supervision, and compel reliance on subordinates'").   Hinkle's declaration that Johnson had instructed employees to cut lunch short if customers are present further supports a finding of a genuine issue of material fact on this question.   (Doc. # 28-12 at ¶ 8).   At a minimum, a trier of fact could infer that had Defendant exercised reasonable diligence, it would have learned of Plaintiff's unpaid time while working during lunch breaks. *See Reich*, 28 F.3d at 1084 (citing *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973)).   Indeed, "[t]his evidence supports an inference that [Defendant] had, at the very least, constructive knowledge that [Plaintiff] worked overtime for which [s]he was not compensated. . . ." *Fletcher*, 2006 WL 2297041, at *6 (citing *Cunningham v. Gibson Elec. Co., Inc.*, 43 F. Supp. 2d 965, 976 (N.D. Ill. 1999) ("Where an

18

employer claims a lack of knowledge, but the evidence (as here) strongly supports an inference of deliberate ignorance, the proper conclusion . . . is that the employer knew about the overtime hours.")).

For these reasons, there is a question of fact concerning whether Defendant had constructive knowledge of Plaintiff's alleged overtime work.  Summary judgment on this issue would be inappropriate.

### B.   Plaintiff Has Provided Sufficient Evidence To Survive Summary Judgment

Defendant has argued that Plaintiff can meet her burden only "with definite and certain evidence."  (Doc. # 26 at 17).   In support of this assertion, Defendant cites a handful of non-binding cases from the Fifth Circuit.   *E.g.*, *Harvill*, 311 F. Supp. 2d at 583 (citations omitted); (*see* Doc. # 26 at 17).

When faced with a motion for summary judgment, a court must view the facts in the light most favorable to the non-movant.  *Allen*, 495 F.3d at 1314.  In the context of an FLSA claim, a plaintiff must present substantial evidence that demonstrates she has not been paid for work she performed.  *Id.*  Plaintiff has produced sufficient evidence on that question.  This is not a case where Plaintiff worked off site and only her own testimony supports her claim.  (*E.g.*, Doc. # 26-3 at pp. 81-82).   Plaintiff worked in a facility with Johnson and others.  She claims she told Johnson she was required to work during lunch.  And Plaintiff's claims that she was called upon to work at lunch are corroborated by Hinkle's testimony (and Hinkle refers to other employees by name that allegedly were aware of Plaintiff's uncompensated overtime work). (Doc. # 28-12 at ¶ 6).  *See also Gilbert*, 625 Fed. Appx. at 373-74 ("several of Gilbert's former coworkers testified that it was obvious to the office that she worked overtime").   Although Plaintiff's

testimony is disputed by Johnson's denial, and Hinkle's declaration is limited in temporal scope, matters related to the parties' credibility are questions for a jury.[4]  *Anderson*, 477 U.S. at 250.

Alternatively, Defendant contends that when an employer has not kept detailed records or its records cannot be trusted, and an employee "must produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference . . . .'"  *Santana v. RCSH Operations, LLC*, No. 10-61376, 2012 WL 463822, at *4 (S.D. Fla. Feb. 13, 2012) (quoting *Mt. Clemens*, 328 U.S. at 687-88).  But this argument is wide of the target.  In such a situation, the "burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence."  *Allen*, 495 F.3d at 1316.  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the results be only approximate."  *Donovan*, 676 F.2d at 471.

Indeed, to prevail on her FSLA claim *at trial*, Plaintiff must show by a preponderance of the evidence that she worked overtime without compensation, or is entitled to such an inference. *Allen*, 495 F.3d at 1314-15.  But, at this point, the court is ruling on a motion for summary judgment.  Defendant's argument confuses the burdens of the parties at this stage.  As the non-moving party opposing Defendant's summary judgment motion, Plaintiff must present evidence sufficient to establish the existence of a genuine issue of material fact on the question of whether

---

[4] The court has already explained (in footnote 3 *supra*), the evidence that could permit a jury to conclude Plaintiff was discouraged from recording overtime.  *See Allen*, 495 F.3d at 1317 ("It can be inferred that these Plaintiffs would have reported their overtime if they had not been discouraged from doing so.").  The court cannot conclude from the record before it whether Plaintiff actually did feel discouraged by Johnson to report her hours. *See Anderson*, 477 U.S. at 250 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").  To the extent Plaintiff's testimony is vague and contradictory as to the number of unpaid hours worked, those characteristics alone are not sufficient for Defendant to prevail on summary judgment because those are matters of credibility for a jury to decide. *Id.*  The judge's job is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  Because the court finds a sufficient disagreement, it concludes a jury should consider the evidence, where it may also properly consider the credibility of the witnesses before it.

Defendant violated the FLSA.  *See Celotex Corp.*, 477 U.S. at 322; *accord Alston*, 2012 WL 5035196, at *6.  She has done so.  It will be for the trier of fact to assess the witnesses' credibility.  So, while it may be fair game at trial, an argument that Plaintiff has not produced written records or other documentary evidence is simply not at play in resolving this Motion.[5]

Finally, Defendant points the court to the Southern District of Florida's decision in *Santana* and the Eleventh Circuit's decision in *Jackson*.  *Santana*, 2012 WL 463822; *Jackson*, 606 Fed. Appx. 945.  But, those two cases are distinguishable from this case.  In both *Santana* and *Jackson*, the only direct evidence of alleged unpaid overtime was a plaintiff's deposition testimony.  While the plaintiff in *Santana* submitted depositions of other employees, that testimony did not corroborate his own, but instead only related to other employees' individual allegations (and experiences) of unpaid work.  2012 WL 463822, at *4-5.  Likewise, in *Jackson*, the plaintiff submitted as direct support only her own uncorroborated testimony.  606 Fed. Appx. at 947-49.  All of the *Jackson* plaintiff's alleged unpaid overtime was performed away from work, and the plaintiff "never stated with any clarity or precision the number of hours she allegedly worked, the amount or nature of that work, where or when the work was completed, or anything else that would assist a fact find in approximating [her] unpaid overtime."  *Id.* at 952.  Here, in addition to Plaintiff's own testimony, Plaintiff's "former coworker[] testified that it was obvious to the office that she worked overtime."  *Gilbert*, 625 Fed. Appx. at 373-74; (Doc. # 28-

---

[5] Defendant contends in a footnote that much of Plaintiff's unpaid time is *de minimis* and may be disregarded.  (Doc. # 26 at p. 18 n. 5).  At least in the context of summary judgment, it is, at best, a footnote argument.  Under the *de minimis* doctrine, brief periods of off-duty time spent working are deemed *de minimis* and are not compensated.  *See Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 880 (2014) (quoting *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 692 (1946)) (because "[s]plit-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act," such "trifles" as "a few seconds or minutes of work beyond the scheduled working hours" may be "disregarded"); *Burks v. Equity Grp.-Eufaula Div., LLC*, 571 F. Supp. 2d 1235, 1247 (M.D. Ala. 2008).  "Most courts have found daily periods of approximately 10 minutes to be *de minimis*."  *Burks*, 571 F. Supp. 2d at 1247 (citing *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (collecting cases); *accord Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1319-20 (N.D. Ala. 2008) (same).  But, Plaintiff alleges unpaid work of "less than 5 to maybe 30 or more minutes."  (Doc. # 26-3 at pp. 81-82).  Again, that is an issue to be resolved at trial.

12 at ¶ 6).  And, Plaintiff's claimed overtime was performed during her hour-long lunch break, at the Vestavia Hills store, assisting new employees and customers with various problems and issues.  (Doc. # 26-3 at pp. 77-79).  This is enough for Plaintiff, perhaps "by the thinnest of margins," to meet her burden of getting her overtime claim to a jury.[6]  *Alston*, 2012 WL 5035196, at *7.  The parties' dispute must be resolved by the finder of fact at trial.  *See Anderson*, 477 U.S. at 250.

## V.      Conclusion

For all of these reasons, the court concludes that a question of material fact remains concerning whether Defendant had knowledge of Plaintiff's alleged uncompensated hours worked off-the-clock.  Therefore, Defendant's Motion For Summary Judgment (Doc. # 25) is due to be denied.

**DONE** and **ORDERED** this March 9, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[6] Of course, Plaintiff may have a difficult time proving her unpaid time worked (even by approximation) to a jury—a burden she must shoulder at trial.  Her burden there is much higher than it is as a non-movant responding to a summary judgment motion.